Metroplex v. Workers' Compensation Comm' 5110139. Counsel, please. Your Honors, Mr. Jerome, my name is Marty Spiegel and I represent the employer Metroplex. This is our appeal of the decision of the Commission which affirmed former arbitrator Nalewski's decision awarding 68 weeks of PTD, $7,011.46 in medical, and penalties and fees under sections 19K, 19L, and section 16. Justice Stewart, I believe, earlier today said, at best, is there evidence in the record to support the Commission's decision? And in this case, I'm going to call your attention to a couple of different areas where I think it fails, and it fails very miserably. The decision finding that the petitioner, Terry Sumner, was temporarily and totally disabled from work from July 25, 2008, through the hearing on November 19, 2009, is against the manifest way that the evidence. The case-wise is very clear. It's the petitioner's burden to prove all of the elements of this case. And to be entitled to TTD, it's not enough that he didn't work, he must be unable to work. Well, in this case, Terry Sumner did work. From June 2008 through the arbitration, he ran a business, TJS Home Repair. At a prior hearing, this case has been tried two times, he testified that he ran a business called Terry's Complete Home Repair and Maintenance, which he had run for 20 years. This testimony was that TJS was run for 10 years. He went in active while he worked for my client, Metroplex. He worked for my client all of three months before his accident. Once he had his injury, he continued to get calls from his prior customers. What did he do when he got those calls? He'd go out and do an estimate. Estimates would take two hours. What would he do other than that? He'd go out and make sure the job was done right. He testified, his name's on the bid. It's his relationship with the customer. He takes pride in his reputation for quality work. He wants to make sure the job is done right. Rhys Hendrickson, one of two individuals to whom the work was, the physical work was turned over to, Rhys and Rich Hendrickson, I'm sorry, Richard Sumner is the brother of Terry Sumner. Rhys Hendrickson, one of the owners of Rhys and Rich's Home Repair, both testified that Mr. Sumner would come to the job site, would give them suggestions on how to do the work, would tell them what the work was supposed to look like when it was finished. Can we cut to the chase? Is the case law such that the claimant loses the right to TTE benefits when they occasionally work, or is the case law required that you lose the benefits when you're in regular and continuous employment? It's a little bit fuzzier than that, isn't it? Well, I think it is, and in this case, I think what I would call this is regular and continuous employment because we're talking about a period of over a year that he ran this business. He ran 11 jobs at the very least. He produced a log, I think it was Petitioner's Exhibit 5, that listed all the jobs. The sheet showed what he did on the job, what he paid Rhys and Rich for the labor, and what he would subsequently earn. He specifically said the net figure on these charts, which is part of the record, is what I make off the job. There was not an eight-month gap between October 2008 and July 2009. TGS was not hired for anything. Is that not in the record? That is absolutely in the record, based upon what he voluntarily produced. Whether you can rely upon that or not, in my mind, is a serious question. I understand that you have a legitimate argument. Is this a fact question for the Commission as to what's regular and continuous? Who resolves that issue? I do believe it's a fact question for the Commission to resolve, but in this situation, the Commission awarded him 68 weeks of TTD, even though he's running this business. The Commission decision doesn't call this occasional wages. The Commission decision does not call it passive income. The Commission decision doesn't even indicate why they disregarded his $16,260 in income. It's almost as if they ignored it. There's no question that he was performing these services. I was concerned about what exactly is work. I suppose everybody has their own definitions. I looked into the American Heritage Dictionary. That dictionary indicates physical and mental effort of activity directed towards production and accomplishment of something. It sure sounds like that's what Terry Sumner was doing during that period of time. It's our position that because they failed to explain their reasoning behind awarding him TTD and ignoring the wages that he made or the income that he made during that period of time, the decisions commissioned as to TTD alone is against the manifest way to the evidence. They also assessed penalties during the course of this case. One of the penalties was based upon non-payment of medical bills. Those medical bills, according to the record, were not furnished to us until the day of trial. Now, Dr. Van Ryn during the course of his testimony indicated, well, yes, I never submitted the bills to the insurance company. Why didn't you submit them to the insurance company? Because I was told by Mr. Sumner and Mr. Sumner's attorney that those bills and the records are to come directly to my office. Mr. Jerome, Mr. Sumner's counsel, obviously is going to tell you that he sent them on to my office or on to the insurance company. And that may be true, but I'll be honest with you, I don't know and it's not part of the record. All right. Just to clarify your position, you're not asserting that the respondent never received them, they just didn't receive them directly in ostensible compliance with the statutory provision. Is that your position? Not entirely, Judge. I am advocating that there's no evidence in the record that they were ever furnished to us. The only evidence in the record as to where those bills went, according to Dr. Van Ryn, were to the attorney or to Mr. Sumner. He specifically said he didn't send them to the insurance company because he was instructed not to. We also, during the course of this hearing, were chastised, that's a bad choice of words, for failing to authorize medical care. Let me go back to that last issue for a second. Focusing on that, assuming what you're saying is true, do you have any case law saying that in that circumstance the statute is intended to absolve an employer of responsibility for medical expenses for the claimant if they don't technically comply with 8.2.E? What's the remedy that you can point us to if that happens? Judge, I think the remedy that I'm referring to here is the denial of the penalties that was awarded for nonpayment of the medical bills. You're not disputing the fact that you have to pay for the medical bills? The $7,000 of medical bills? No, I'm not disputing that. You're suggesting that you shouldn't penalize because you were never furnished with the bills. That's exactly it, or there's no proof that I was furnished with the bills prior to that. And then we also have to look at the castigation that I was given, or my client was given during the course of the hearing, which was summarily affirmed by the commission for not authorizing the care recommended by Dr. Van Wren that was subject to the first hearing and the subsequent commission decision. Well, I think you need to look at what treatment that was that I was castigated for. There was a lot of chastisement and castigation in this case, wasn't there? I can't explain my relationship with the arbitrator, but he's not an arbitrator. Were you a continuing objection that you were castigated and you don't have to mention and decline? I should have done that. I didn't think to do that. Part of the problem is we were penalized, we were castigated for not authorizing an EMG, not authorizing two MRIs that the arbitrator had awarded in the first hearing. Well, the problem is we had this first hearing. We were disputing employer-employee relationship. We appealed that. During the time that appeal was pending in front of the commission, Mr. Sumner went and had the EMG and he went and had the MRI. How could I have authorized those tests while I was still disputing employer-employee relationship, other than out of the benevolence of my client's heart? And I don't think that's going to happen when you're disputing that type of relationship. And I think really what it comes down to is that when you put building blocks together, blocks A's, blocks B's, C's, the decision is against the manifest way that he was working. There's no indication that's occasional wages, or at least it's not been called occasional wages. The decision of penalties was based upon something that I was never furnished prior to the date of trial. And the non-authorization for the treatment was something that I wouldn't have authorized because I was disputing that he was even my employee up until four months prior to the second arbitration. We respectfully request that you reverse the decision of the commission finding it's against the manifest way to the evidence. If you have any questions, thank you. Counsel, please. Thank you. May it please the court, I'm David Jerome, I'm back. I'm representing Terry Sumner in this case, and I promise I won't use the word cascade. The question today that was brought before this appellate court is whether the commission's affirmation of Arbitrator Nalewski's opinion on this is against the manifest way to the evidence. I have to refer back to Judge Nalewski's because the commission affirmed without comment. The affirmation that we're talking about applies to medical benefits, it applies to the award for lost time benefits. The best of all is the commission gets to rely on its own previous award as evidence of the current award showing that it's not against the manifest way. The facts of this case are pretty straightforward. July of 2008, Terry was lifting a lawn heavy mower deck, injuring various parts of his body. The case was initially tried in August of 2008. At that time, Judge Nalewski awarded lost time benefits and awarded medical care, and his words were, medical care consistent with Dr. Van Ryn's recommendations. The award was appealed to the commission, commission affirmed. It was never appealed any further than the commission. After that award was affirmed, the insurance company, instead of authorizing Dr. Van Ryn consistent with the award, refused. Instead, they sent my client to an independent medical evaluation. They also paid maintenance benefits up to the date of the first hearing, but didn't pay anything further. Even though there had been no doctor that had released him to go back to work, no change in his medical status because nothing had been approved. The doctor was still awaiting authority to proceed forward with the actual treatment. So, at this point, while we're going through and have just finished that appeal, they send him to this independent medical examination. Following the medical examination, they still have continued the denial. They didn't pay any further benefits for medical care or lost time benefits. Wasn't this during the period of time where he was working for TKS Home Repair? Yes. I mean, during that time period, whenever we're talking about working for, that's where things become a little bit difficult to identify. At trial, Terry admitted that what he was doing was his business would get job leads. He would take the job leads, do the bid, but all the work went to his brother's company. He didn't do any of the work himself. But nevertheless, he was earning income from this activity. Agreed. And during the course of that 15 months from June of 2008 to August of 2009, he had bid on 16 jobs, of which he said the bid took him 1 to 2 hours. So, over the course of 15 months, he worked anywhere from 16 to 32 hours to do these bids. So that's what we're talking about. Well, as to do the bids, I mean, he did testify, though, that he went out on the jobs to make sure the jobs were being done correctly and some things like that, too, right? Yes. But no specific indication of the number of hours. Right. But they get wind of this, and they think that's a reasonable basis. Why hit them with the penalty? And, you know, to be quite honest, at the beginning of trial, we had even discussed with them compromising and trying to work through these issues. But the problem that comes in is, as we proceed forward to trial, and they're not authorizing even a wage differential. Because the way I look at it is, even if he was working part-time here, he'd be entitled to wage differential or maintenance benefits or temporary partial disability. He'd be entitled to something. Because if he was entitled to such a high rate of pay, and the most he made was $16,000 over the course of 15 months, at minimum, we're talking a wage differential that would be due in OE. So instead, they've basically denied all of it, saying he was capable of returning to work full duty in this business, which is inconsistent with what he testified to. And it seems to me that the case that's... Well, of course it's going to be inconsistent with what he testified to. They're not going to agree, are they, on how much he's working, that this is something that should be used against the TTD? They're never going to agree with that. But it's different when you're assessing a penalty. And I do agree. But in this situation, if they'd have paid something to assist him, I think that the commission would have modified... So you're saying they had no good faith effort here under rehab, knowing that he was working? On the rehab or the payment of maintenance? Payment. The payment of maintenance, there wasn't any. Because even following trial, up until today, there had been no temporary partial disability benefits paid. If they had believed that he was working part-time, making income of some type, I mean, we voluntarily provided that information. We provided that documentation for him. He testified to it. That certainly was something that could have been remedied long before the commission hit him with the penalties. And we would have enjoyed that. My client has gone without any maintenance benefits for how many months now? And so that would have certainly been something that could have been remedied. Well, what about them feeling they had a good faith belief the commission would find in their favor on that issue? Well, and that's where they're relying. And I agree that they certainly have a good faith basis in their mind. Obviously, I would disagree, because there was no actual effort made to pay any benefits whatsoever, whether it be temporary partial, maintenance of any kind. And so instead, what they've done is, even though they were ordered to pay the temporary partial, or excuse me, the temporary total, which gets to the first portion of it, between the date of hearing up until the time that we're talking about that he was identified as going back to work, I mean, there's even times in there that they simply paid nothing. And I think what they're doing is they're relying on that Dolce case, or the Dolce case, where they're saying, well, look, he's working full-time, where in the Dolce case the appellate court had said, well, this person was working as a realtor. The distinction in that case, as compared to the cases I cite with the J.M. Jones and the Zenith case, is with the realtor case, when he's working at this other job, he had made, what, 19 sales in six months of real estate, of selling real estate. So in essence, the court was saying, he is working full-time. There's no evidence in our case that our guy is working full-time. In fact, his testimony is to the contrary. So we're more similar to the Zenith case and the J.M. Jones case, where the person is working a couple of hours in the morning as a bus driver, or a couple of hours in the afternoon as a bus driver. Are there any hard and fast definitions of regular and continuous? There aren't any, are there? Correct, there aren't any. I think you can probably, I tend to agree with you, can distinguish Dolce from this case, but there's still a legitimate reason to dispute it, isn't there? Well, I... I want you to concede that you probably shouldn't because you're being reported, but I think you can see there's an argument. For purposes of penalties, I would say they do have an argument on that because my guy did identify that he was working. Right, and he was making a legitimate income from it. And so, I mean, to that extent, yes, I would agree that they do have an argument with regards to that. But with regards to the underlying aspect of all this, do they still owe medical benefits? Do they still owe the remaining temporary total disability benefits? That, obviously, is not against the manifest way to the evidence. We have a previous award. We have the treating doctor who testified this condition has not changed. We're still waiting for authority of medical treatment. All of these conditions remain the same from that first award that was never complied with. That's where the penalties come in. Are you suggesting that they were wrong in awarding the penalties? Do you think they were correct in awarding the penalties? Do I think that they were wrong? Certainly not. I believe that the penalties should have been. Okay, now the question becomes, what cases did you cite in support of your position that they weren't wrong? You did it again. No cases. I agree, Your Honor. All right. But as it relates to the remaining underlying issues, which to me are the most important aspects. It's a different issue. I agree. I agree. So at this point, what we're asking is that the commission's decision on this matter be affirmed, that we believe that it is not against the manifest way to the evidence, that the award from the first case is certainly documentation and evidence of the current award and certainly provides the necessary evidence. Any further questions? Your Honor, please. Hopefully very briefly, Your Honor. We complied fully with the decision of the commission on the first case. We paid the TTD that was awarded after they reduced it by 50 or 40 some odd weeks. We paid the accrued medical bills that were due at the time. That's after the first commission decision. We paid medical bills that were due as well. So we've complied with that. The other part of this order was that we authorize these tests. Well, you know, we can't authorize something that's already been done. By the time we came to the second hearing, after the commission's decision came down confirming that he was an employee of Metroplex, he had already had all those tests done. Dr. Van Ryn had said he needed a hernia surgery. Dr. Van Ryn is an orthopedic surgeon. Well, guess what? We couldn't have authorized a hernia surgery because Mr. Sumner had never even been to the doctor who Dr. Van Ryn referred him to for this hernia surgery. There was no order for hernia surgery. Mr. Sumner indicated when asked about this, why didn't you go? Well, Dr. Van Ryn told me I couldn't go. So, you know, that's another red herring as far as we're concerned. In terms of the $16,260 that he has admitted to earning, he also produced an estimated tax deposit. He asked for an extension on his taxes. That form made out in his name only showed earnings for 2008 of $28,000. He claims it's part of his wife's income as well. Her name's not on the form, though. So I don't know how much Terry Sumner earned that year. I do know that he's admitted to at least $16,260. I think we've done everything as we've been required to for appealing the decision. We have a qualified medical opinion, which the commission did discount, indicating that Mr. Sumner was capable of returning to his full and customary job duties. That's why TTD is not. Can I ask you a question? Yes, sir. In the first hearing of the arbitrator order, respondents shall pay the medical bill submitted, 4,161.15, subject to the medical fee schedule. Respondents shall authorize in pay for the recommended diagnostic testing and surgeries, comma, specifically the hernia repair surgery and others if applicable. Yes, sir. Did you authorize hernia repair surgery? Could it be a yes or a no? Okay. Did you ever authorize hernia repair surgery? Because it's never been ordered. The answer would be no, it's never been ordered. Dr. Bambrin is not a hernia surgery. He referred Mr. … You don't get to fight that battle again. Okay. You should have fought that battle the first time. I tried to, Judge. I was not able to. In the commission, on review of that order, affirm that portion of the arbitration. Yes. That must be written like that. Yes. Thank you. Thank you, counsel. The court will take the matter under advisory for disposition. Please to the next case. Donny Dugan against Industrial Commission. 4-1104-1.